IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

WESTERN DIVISION

ABDULLA AHMED, et al.                                    PLAINTIFFS

V.                          CIVIL ACTION NO. 5:21-CV-58-DCB-RHWR

CITY OF NATCHEZ, MS et al.                               DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court on Defendants Sherriff Travis Patten, Deputy Shane Daughtery, Deputy Ivori Campbell, Deputy Keith Myles, and Deputy Stanley Searcy, Jr. (collectively, "County Defendants")'s Motion for Judgment on the Pleadings Based on Qualified Immunity ("Motion") [ECF No. 46]. Defendants Chief of Police Joseph Daughtery and Mayor Dan Gibson (collectively, "Natchez Defendants") joined the Motion. Defendants argue that Abdulla Ahmed, Nasser Alhumasi, and Kennedy Hussain (collectively, "Plaintiffs") cannot defeat qualified immunity because the Amended Complaint [ECF No. 38] does not satisfy pleading standards. In response, Plaintiffs allege that the search and seizure of their business and residence violated their constitutional rights. [ECF No. 59] The Court having examined the Motion, the submissions of the parties, the record, the applicable legal authority, and being fully informed in the premises, finds that the Motion should be granted in part and denied in part.

I.    <u>Factual and Procedural Background</u>

Ahmed owns and operates EZ QUIK STOP, a convenience store in Natchez, Mississippi, that sells products containing Cannabidiol ("CBD"). [ECF No. 38] at 2. The provisions of the Mississippi Hemp Cultivation Act legalized the purchase, use, and sale of hemp-sourced CBD products in Mississippi. See Miss. Code Ann. § 69-25-201, et al. Alhumasi and Hussain are employees of the convenience store. [ECF No. 38] at 2-3.

On June 2, 2021, a confidential informant entered the EZ QUIK STOP, owned by Ahmed, and purchased "two (2) items of CBD, one being a leafy substance in a sealed plastic bag containing a bar code and the other being the same substance in a bottle which was sealed and contained a bar code." [ECF No. 38] at 5. The informant provided the purchased-products to Sergeant Campbell. [ECF No. 47] at 2. Sergeant Campbell subsequently secured a search warrant of the EZ QUIK STOP because (1) the purchased-products field-tested positive for Tetrahydrocannabinol ("THC")[1]; and (2) investigators received additional information leading up to the controlled-buy. [ECF No. 64] at 4.

Once the warrant was issued by an Adams County Court judge, the City of Natchez Police Department and the Adams County

---

[1] THC is "marijuana's main psychoactive chemical." United States v. El Hage, 741 F. App'x 194, 197 (5th Cir. 2018). According to the Sentencing Guidelines' Drug Equivalency Table for Schedule I Marijuana, "one gram of a mixture or substance containing a detectable amount of organic or synthetic THC is the equivalent of 167 grams of marijuana." United States v. Koss, 812 F.3d 460, 464 (5th Cir. 2016).

Sheriff's Office officials executed the warrant at the convenience store. [ECF No. 47] at 3. They seized $24,000 in currency, a DVR surveillance system, and "other items of merchandise,;" officials also arrested Ahmed and Hussain. [ECF No. 38] at 6. Plaintiffs allege that arresting officers subsequently forced Hussain "to take them to his place of residence where [Alhumasi] was asleep," arrested Alhumasi at the home, and conducted "an unlawful search of the [home] and . . . destroyed property belonging [to] Hussain and Alhumasi. . . ." [ECF No. 38] at 6.

Plaintiffs filed this action pursuant to 42 U.S.C. §§ 1983, 1985, and 1988 on June 28, 2021. [ECF No. 1]. Plaintiffs allege that the search and seizure of their property violated their constitutional rights under the Fourth and Fourteenth Amendment. Id. at 9-14.

On September 23, 2021, County Defendants filed their first Rule 12(c) Motion for Judgment on the Pleadings. [ECF No. 10]. In that motion, County Defendants requested that the Court: (1) either substitute the County Defendants for the County itself or dismiss duplicative members of the County Defendants and (2) stay this case pending the outcome of state criminal proceedings against two of the plaintiffs in this case. Id. at 3-5. Given that the state criminal proceedings were based on the underlying facts of this case, the Court granted the stay. [ECF No. 18].

The Court lifted the stay on June 16, 2023 because an Adams County Grand Jury no billed the alleged criminal matter associated with Plaintiffs' arrest. [ECF No. 28]. Shortly thereafter, the Court dismissed without prejudice the first Motion for Judgment with permission to reurge the motion upon the conclusion of discovery. [ECF No. 30] at 5.

On August 25, 2023, Plaintiffs filed a Motion for Leave to File an Amended Complaint [ECF No. 36], and Defendants asserted no objections. [ECF No. 37]. The Court entered a Text Only Order granting the Motion for Leave on September 12, 2023. Plaintiffs filed their Amended Complaint [ECF No. 38] on September 18, 2023.[2]

County Defendants subsequently filed the Motion on June 29, 2023, in which they requested that the Court dismiss Plaintiffs' claims against County Defendants in their individual capacities. [ECF No. 46]. In their Motion, County Defendants assert that the Plaintiffs could not overcome the individual Defendants' qualified immunity because the Amended Complaint failed to satisfy pleading standards. [ECF No. 47]. Natchez Defendants filed a Joinder in the Motion [ECF No. 52] on October 20, 2023. Plaintiffs filed a

_____

[2] The Amended Complaint contains eight counts alleged against Defendants. These include deprivation of procedural due process (Count I), deprivation of substantive due process (Count II), deprivation of equal protection (Count III), unreasonable search and seizure in violation of the Fourth Amendment (Count IV), conspiracy in violation of 42 U.S.C. § 1985 (Count V), and constitutional violations under 42 U.S.C. § 1983 (Count VI). Plaintiffs also seek injunctive relief (Count VII) and declaratory relief (Count VIII) related to the alleged due process violations.

Response in Opposition to the Motion [ECF No. 59] on November 28, 2023, and County Defendants filed a timely Reply [ECF No. 64] on December 4, 2023. Natchez Defendants filed a Joinder in the Reply [ECF No. 65] on December 5, 2023.

## II. Legal Standard and Qualified Immunity Considerations

Rule 12(c) of the Federal Rules of Civil Procedure governs a motion for judgment on the pleadings. The standard for addressing a Rule 12(c) motion is the same as that for addressing a motion to dismiss under Rule 12(b)(6). In re Great Lakes Dredge & Co., 624 F.3d 201, 209-10 (5th Cir. 2010); Doe v. MySpace, Inc., 528 F.3d 413, 418 (5th Cir. 2008). To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Great Lakes Dredge, 624 F.3d at 210 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The factual allegations in a complaint must be enough to raise the right to relief above the speculative level. See, e.g., Twombly, 550 U.S. at 555; Great Lakes Dredge, 624 F.3d at 210. The Court must "accept all well-pleaded facts as true and construe the

complaint in the light most favorable to the plaintiff." Great Lakes Dredge, 624 F.3d at 210.

In this case, County and Natchez Defendants raised qualified immunity as a defense in their respective Answers [ECF Nos. 5 and 7]. County and Natchez Defendants also asserted the defense in the Motion [ECF Nos. 46 and 52]. The Fifth Circuit has instructed district courts that where "public officials assert qualified immunity in a motion to dismiss, a district court must rule on the motion." Carswell v. Camp, 54 F.4th 307, 311 (5th Cir. 2022). Qualified immunity is more than a mere defense to liability; it is an immunity from suit. See Pearson v. Callahan, 555 U.S. 223 (2009). Because "qualified immunity is immunity from having to stand trial," Brown v. Glossip, 878 F.2d 871, 874 (5th Cir. 1989), it should be addressed "'at the earliest possible stage of the litigation.'" Carswell, 54 F.4th at 310 (quoting Ramirez v. Guadarrama, 3 F.4th 129, 133 (5th Cir. 2021)).

In Anderson v. Valdez, the Fifth Circuit clarified the following pleading standard:

> ... [W]hen, as here, a qualified immunity defense is asserted in an answer or motion to dismiss, "the district court must"—as always—do no more than determine whether the plaintiff has "file[d] a short and plain statement of his complaint, a statement that rests on more than

> conclusions alone." In so doing, we expressly required
> the district court to apply "Rule 8(a)(2)'s 'short and
> plain' standard" to the complaint.

845 F.3d 580, 589–90 (5th Cir. 2016) (footnotes omitted); see also
Arnold v. Williams, 979 F.3d 262, 267 (5th Cir. 2020) ("Section
1983 claims implicating qualified immunity are subject to the same
Rule 8 pleading standard set forth in Twombly and Iqbal as all
other claims; an assertion of qualified immunity in a defendant's
answer or motion to dismiss does not subject the complaint to a
heightened pleading standard."); McLean v. Davis, 2023 WL 1868192,
at *2 (N.D. Miss. Feb. 9, 2023); Flynt v. Jasper Cnty.,
Mississippi, 2022 WL 4809405, at *2 (S.D. Miss. Sept. 30, 2022);
Williams v. City of Jackson, 2021 WL 4485865, at *3 (S.D. Miss.
Sept. 29, 2021); Hollins, 2019 WL 3307056, at *2.

In qualified immunity cases where the district court finds a
complaint insufficient under Rule 8(a)(2), the review process on
a motion to dismiss does not necessarily end. The district court
may order the plaintiff to file a reply to the qualified immunity
defense under Federal Rule of Civil Procedure 7(a)(7). The Fifth
Circuit explained this procedure in Schultea v. Wood:

> When a public official pleads the affirmative defense of
> qualified immunity in his answer, the district court
> may, on the official's motion or on its own, require the

7

plaintiff to reply to that defense in detail. By definition, the reply must be tailored to the assertion of qualified immunity and fairly engage its allegations. A defendant has an incentive to plead his defense with some particularity because it has the practical effect of requiring particularity in the reply.

The Federal Rules of Civil Procedure permit the use of Rule 7 in this manner. The only Civil Rule that governs the content of Rule 7 replies is Rule 8(e)(1), which demands that "[e]ach averment of a pleading shall be simple, concise, and direct."

47 F.3d 1427, 1433–34 (5th Cir. 1995).

III. <u>Discussion</u>

Public officials are generally shielded from suit when performing discretionary functions unless it is shown by specific allegations that they violated "clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). Qualified immunity is intended to protect public officials from the "burdens of fighting lawsuits which arise from the good-faith performance of their duties." <u>Wren v. Towe</u>, 130 F.3d 1154, 1159 (5th Cir. 1997). Qualified immunity "protects all but the plainly

incompetent or those who knowingly violate the law." Valdez, 845 F.3d 580, 599-60 (5th Cir. 2016).

"When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc). There is a two-prong inquiry to determine whether state actors are entitled to qualified immunity. Id. at 322. The first inquiry is "whether a constitutional right would have been violated on the facts alleged." Id. The second inquiry is whether the constitutional right was clearly established at the time of the actions complained of. Id. "Ultimately, a state actor is entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions." Id.

A. Sergeant Campbell

Plaintiffs raise a Fourth Amendment violation under Count IV of the Amended Complaint against Sergeant Campbell because "Sergeant Ivori Campbell, a member of the Adam's County Sheriff's office, signed an affidavit and secured an overly broad search warrant, which was based on misrepresentations and false and incorrect information." [ECF No. 38] at 6. In briefing, Plaintiffs allege that "no objective reasonable police officer or deputy sheriff could have thought that using the word of an unreliable

informant, whose statement was contradicted by the facts and physical evidence, in light of clearly established Fourth Amendment law, [h]as probable cause to get a search warrant, arrest an individual or seize property." [ECF No. 62] at 9.

Sergeant Campbell argues that Plaintiffs cannot overcome qualified immunity concerning her conduct because the affidavit in support of the search warrant is supported by probable cause. [ECF No. 64] at 3. "The Fourth Amendment guarantees the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Trent v. Wade, 776 F.3d 368, 377 (5th Cir. 2015). The Fourth Amendment requires law enforcement to provide sufficient reliable information to determine probable cause. United States v. May, 819 F.2d 531, 535 (5th Cir. 1987). "In making this determination, . . . the officer may draw reasonable inferences from the material he receives, and his ultimate probable cause decision should be paid great deference by reviewing courts." Id. (citing Illinois v. Gates, 462 U.S. 213, 236 (1983)).

Plaintiffs allege that the affidavit was in "reckless disregard to facts and physical evidence" in violation of Franks v. Delaware, 438 U.S. 154 (1978).[3] [ECF No. 62] at 7. Under Franks,

---

[3] A Franks violation "addresses the distinct issue of false information in a warrant application." Melton v. Phillips, 875 F.3d 256, 265 (5th Cir. 2017) (en banc).

an individual who alleges a Fourth Amendment violation must show (1) the affiant, in support of the warrant, included a "false statement knowingly and intentionally, or with reckless disregard for the truth" and (2) "the allegedly false statement is necessary to the finding of probable cause." Franks, 438 U.S. at 155-56. "It requires affiants to set forth particular facts and circumstances underlying the existence of probable cause," including those that concern the reliability and credibility of the source to avoid "deliberately or recklessly false statement[s]." Id. at 165.

In applying Franks to this case, Plaintiffs must first present evidence that Sergeant Campbell, through material omissions or otherwise, made "a false statement knowingly and intentionally, or with reckless disregard for the truth." Franks, 438 U.S. at 155. Plaintiffs point to two facts: (1) that the product purchased in the controlled-buy included "two sealed bar[-]coded containers bearing an identification to indicate [CBD];" and (2) that Sergeant Campbell did not corroborate that the product "was or was not marijuana" because the State "sought a continuance" at the preliminary hearing for Hussain and Alhumasi to complete lab tests for the presence of marijuana in the product. [ECF No. 62] at 6. Sergeant Campbell rebuts these allegations by offering the

affidavit,[4] showing (1) Sergeant Campbell drove the informant to
Plaintiffs' store and recovered the product after the controlled-
buy and (2) the product field-tested positive for the presence of
THC. [ECF No. 64-1]. Sergeant Campbell also submitted in the
affidavit that law enforcement received additional information
three weeks before the controlled-buy that Plaintiffs were
packaging and selling marijuana from their store. Id.

Under the facts described, it does not appear that Sergeant
Campbell acted deliberately, with reckless disregard for the truth
in submission of the affidavit for the search warrant because (1)
Sergeant Campbell relied on this informant in the purchase of the
product, (2) the product field-tested positive for the presence of
THC, and (3) law enforcement received additional information that
Plaintiffs were packaging and selling marijuana within Plaintiffs'
store. This Court is persuaded that Sergeant Campbell has offered
sufficient reliable information to support probable cause.

Because this Court finds the existence of probable cause, it
also finds that the search warrant was valid. Under the independent
intermediary doctrine, "if facts supporting an arrest are placed

---

[4] Plaintiffs incorporated the affidavit for the search warrant in their Amended
Complaint, [ECF No. 38] at 6, and their Response. [ECF No. 62] at 8-9. "In
deciding a motion to dismiss, courts may consider the complaint, as well as
other sources such as documents incorporated into the complaint by reference,
and matters of which a court may take judicial notice." Pearson v. Sw.
Mississippi Med. Ctr., 2023 2668423, at *2 (S.D. Miss. Mar. 28, 2023) (citing
Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)).

before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." Terwilliger v. Reyna, 4 F.4th 270, 281 (5th Cir. 2021) (quoting Cuadra v. Houston Indep. Sch. Dist., 626 F.3d 808, 813 (5th Cir. 2010)). Here, Sergeant Campbell had sufficient reliable information to support probable cause and submitted this information via affidavit to an independent intermediary, i.e., the Adams County Court Judge.

To overcome qualified immunity of a claim concerning an unreasonable search or seizure, Plaintiffs must show "material misstatements and omissions in the warrant affidavit" that are of "'such character that no reasonable official would have submitted it to a magistrate.'" Morin v. Caire, 77 F.3d 116, 122 (5th Cir. 1996) (quoting Hale, 899 F.2d at 402). Plaintiffs claim that "no objective reasonable police officer or deputy sheriff" could have relied on the affidavit in this case. [ECF No. 62] at 9. This allegation appears to be made on the assertion that there was no probable cause because Plaintiffs were no billed by the Adams County Grand Jury. This allegation is incorrect because (1) Plaintiffs have not provided specific facts or evidence supporting the charge that Sergeant Campbell made such material misstatements or omissions and (2) a probable cause inquiry "focuses only on what the officer could have reasonably believed at the time based on the relevant law, as well as the facts supplied to him by the

eyewitness." <u>Morris v. Dillard Dept. Stores, Inc.</u>, 277 F.3d 743, 754 (5th Cir. 2001). Sergeant Campbell satisfied this inquiry by offering the affidavit showing that she relied on information from the informant, the positive field-test, and the additional information received within three weeks before the controlled-buy to establish probable cause. Thus, this Court finds that Plaintiffs cannot overcome qualified immunity as to Sergeant Campbell in her individual capacity as it pertains to the probable cause obtained and subsequent search of the shop.[5]

B. Deputy Searcy

Plaintiffs continue in their Amended Complaint by alleging that "Deputy Searcy knew or should have known that he was falsely charging Hussain with the unlawful sale of Marijuana and Alhumasi and [sic] with the unlawful possession of a pound of Marijuana with intent to sell . . . ." [ECF No. 38] at 7; <u>see also</u> [ECF No. 62] at 9. Deputy Searcy asserts in their Motion that he is entitled

---

[5] The Court recognizes that the Amended Complaint contains a factual allegation that "[m]embers of the Natchez Police Department, the Special Operations Unit and the Adams County Sheriff's office" arrested Hussain and "forced him to take [the officials] to [Hussain's] place of residence" where the law enforcement officials conducted a search of the home without a warrant. [ECF No. 38] at 6. Plaintiffs reiterated this factual allegation in their brief. [ECF No. 62] at 2. Defendants deny this allegation in their Answers. [ECF No. 45] at 7; [ECF No. 49] 7. The Court's ruling under this subheading relates to the search warrant obtained by Sergeant Campbell and not the lawfulness of the search of Hussain's home. The Court further permits Plaintiffs to identify the individual Defendants and their specific conduct to support this allegation in the <u>Schultea</u> reply.

to qualified immunity as to the malicious prosecution allegation. [ECF No. 47] at 20.

Plaintiffs raise several Fourth Amendment and 42 U.S.C. § 1983 violations under Count IV and Count VI arising from the alleged unlawful arrest of Plaintiffs. [ECF No. 38] at 12-14. In briefing, Plaintiffs submit that (1) the search warrant was invalid, (2) Deputy Searcy lacked probable cause to arrest the Plaintiffs, and (3) Deputy Searcy signed false affidavits to effectuate Plaintiffs' arrest and detention. [ECF No. 62] at 9-10. Plaintiffs further state that "[n]o police officer could have thought that it was objectively reasonable to arrest someone without probable cause, or based on lies." Id. at 11.

In support of their assertion, Plaintiffs cite Terwilliger v. Reyna, 4 F.4th 270 (5th Cir. 2021), to show that Plaintiffs are entitled "to be free from arrest without a good faith showing of probable cause." Id. at 285 (citing Winfrey v. Rogers, 901 F.3d 483, 494 (5th Cir. 2018)). But Terwilliger was a Fifth Circuit opinion concerning a defendant's false arrest claim against law enforcement and not malicious prosecution. To the extent that Plaintiffs allege a malicious prosecution claim against Deputy Searcy, the Court notes that there is "[n]o clearly established, freestanding federal constitutional right to be free from malicious prosecution or abuse of process. . . ." Hagan v. Jackson,

<u>Miss.</u>, 2014 WL 4914801, at *6 (S.D. Miss. 2014) (citing <u>Cevallos</u> <u>v. Silva</u>, 541 F. App'x 390, 394 (5th Cir. 2013) (per curiam)).

To the extent that Plaintiffs allege a false arrest claim against Deputy Searcy, the Court cannot make a determination at this point in the litigation. To "prevail on [a] section 1983 false arrest/false imprisonment claim, [Plaintiff] must show that [Deputy Searcy] did not have probable cause to arrest him." <u>Haggerty v. Tex. S. Univ.</u>, 391 F.3d 653, 655 (5th Cir. 2004). In briefing, Plaintiffs allege that Deputy Searcy arrested Hussain and Alhumasi without probable cause. [ECF No. 62] at 9. Defendants respond by arguing that Plaintiffs failed to allege a false arrest claim in their Amended Complaint. [ECF No. 64] at 11.

The Court recognizes that Plaintiffs did submit a factual allegation under Count VI presumably for false arrest but failed to allege discrete conduct against Deputy Searcy that he "falsely arrested plaintiffs. . . ." [ECF No. 38] at 14. Still, there is not enough evidence in the record to show a basis for the search of Hussain's and Alhumasi's residence and subsequent arrest, or lack thereof. Thus, this Court finds that Plaintiffs cannot overcome qualified immunity as to Deputy Searcy in his individual capacity under malicious prosecution. However, the Court will permit a <u>Schultea</u> reply because the Court is in need of more facts

to determine if there is a § 1983 false arrest violation. The Court will address the Schultea reply later in this opinion.

C. Mayor Gibson, Sheriff Patten, Police Chief Daughtry, and Deputy Daugherty

1. Mayor Gibson

Plaintiffs raise a Fourteenth Amendment due process violation under Count I and Count II of the Amended Complaint. [ECF No. 38] at 10-11. Plaintiffs allege that (1) Mayor Gibson was present when Defendants executed the search warrant at Plaintiffs' shop, (2) Mayor Gibson failed to intervene when city officials closed Plaintiffs' shop, (3) Mayor Gibson has refused to reopen Plaintiffs' shop, (4) Mayor Gibson failed to give Plaintiffs notice or a hearing prior to the closure, and (5) Mayor Gibson made public statements describing Plaintiffs' business "as a drug dealing establishment" despite knowing no drugs were recovered from the business. [ECF No. 62] at 12-14.

"A § 1983 action may be brought for a violation of procedural due process. . . . In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." Zinermon v. Burch, 494 U.S. 113, 125 (1990). "Privileges, licenses, certificates, and

franchises . . . qualify as property interests" for the purposes
of due process. Bowlby, 681 F.3d at 220-21.

"Where the government permanently deprives plaintiff of his
even lawfully seized personal belongings, plaintiff's due process
property interest is implicated, and a Section 1983 claim arises."
Hahn v. City of Kenner, 984 F. Supp. 424, 430 (E.D. La. 1997)
(citing Matthias v. Bingley, 906 F.2d 1047, 1050 (5th Cir. 1990),
modified on other grounds 915 F.2d 946 (5th Cir. 1990)). Although
most states have enacted statutes to govern the disposition of
property seized pursuant to a search warrant, no such statutes
exist in Mississippi. See Newman v. Stuart, 597 So.2d 609, 614
(Miss. 1992). But in Newman, the Mississippi Supreme Court
summarized the procedure for the return of property seized under
authority of a warrant:

> Property seized under a search warrant is an exercise of
> the police power of the state, and the state has the
> authority to keep and maintain control of the property
> until it is no longer needed in a criminal prosecution
> or investigation. . . . While the property is thus
> seized, it is under the lawful custody of the magistrate
> who issued the warrant, or the court having jurisdiction
> of the criminal prosecution in which the property is
> material evidence. . . . When seized property is no

longer needed for criminal prosecution by the state, it
should be restored to its lawful owner. If there is no
conflict as to ownership, the court having custody of
the property ordinarily directs its release to the
owner. [The defendant], therefore, had no authority on
its own in this case to deliver the [property] to [the
plaintiff] absent court approval. . . . The appropriate
procedure would have been for [the defendant], once the
[property] served no further purpose in a criminal
investigation or prosecution, to make a motion in the
justice court for authority to release it to [the
plaintiff]. . . . If there was no conflict or objection
to the motion, it would have been proper for the justice
court to release it to its lawful owner. . .

Id. at 615-616; see also Cooper v. City of Greenwood, Miss., 904
F.2d 302, 304 (5th Cir. 1990) ("The general rule is that seized
property, other than contraband, should be returned to its rightful
owner once the criminal proceedings have terminated.").[6]

---

[6] There are two types of contraband: contraband per se and derivative contraband.
"Contraband per se consists of objects which are 'intrinsically illegal in
character,' [. . .] 'the possession of which, without more, constitutes a
crime,' i.e. a controlled substance." Cooper v. City of Greenwood, Miss., 904
F.2d 302, 304 (5th Cir. 1990) (quoting One 1958 Plymouth Sedan v. Pennsylvania,
380 U.S. 693, 699-700 (1965)). "[D]erivative contraband includes items which
are not inherently unlawful but which may become unlawful because of the use to
which they are put—for example, an automobile used in a bank robbery." Id.; see
also One 1958 Plymouth Sedan, 380 U.S. at 699.

In this case, Plaintiffs allege that they have a property interest in their business, and that the closure of the business without due process of law deprives Plaintiffs of their property interest. [ECF No. 62] at 14. The Court also notes that any seized property is to be returned to its rightful owners upon the conclusion of the criminal proceedings, and there is no evidence to show that possession of the convenience store is "inherently illegal." See Cooper, 904 F.2d at 305. Still, the Court is unable to determine whether Plaintiffs' convenience store is closed or whether Plaintiffs are still prevented from accessing the convenience store. Although the Amended Complaint indicates that Plaintiffs are denied access to their convenience store [ECF No. 38] at 15, Plaintiffs' pleadings and brief do not articulate whether Defendants prevent the return of property seized pursuant to the search warrant.

One district court found a violation of due process under the Fourteenth Amendment because (1) defendants failed to return seized property pursuant to a court order compelling the return of the seized items, and (2) the plaintiff pursued the adequate state remedies available under Newman to regain property seized under a search warrant. Roderick v. City of Gulfport, 144 F. Supp. 622, 632 (S.D. Miss. 2000). Here, the Court is unable to analyze the disposition of Plaintiffs' property seized pursuant to the search of the convenience store. Thus, the Court will permit a Schultea

reply because the Court is in need of more facts to determine if there is a constitutional Fourteenth Amendment violation. The Court will address the Schultea reply later in this opinion.

2. Sheriff Patten

Plaintiffs raise a 42 U.S.C. § 1983 violation under Count VI. [ECF No. 38] at 13-14. Plaintiffs offer the following allegation in their Amended Complaint: "The Mayor, the Chief of Police, the Sheriff and Shane Daugherty were in supervisory positions and could have stopped the continued violations of Plaintiffs' constitutional right, but they did nothing." Id. at 9. Under this allegation, the Court presumes Plaintiffs are trying to attach either supervisory liability or a failure to intervene action under § 1983 against Sheriff Patten.

"A supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." Gates v. Texas Dep't of Prot. & Reg. Servs., 537 F.3d 404, 435 (5th Cir. 2008). "In order to establish supervisory liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates." Id.

(internal quotation marks and citation omitted, alterations and emphasis in original).

An official may be liable under a § 1983 failure to intervene claim where "[he] is present at the scene [but] does not take reasonable measures to protect a suspect from another officer's use of excessive force." Whitley v. Hanna, 726 F.3d 631, 656 (5th Cir. 2013). "[A]n officer may be liable under § 1983 under a theory of bystander liability where the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Hamilton v. Kindred, 845 F.3d 659, 663 (5th Cir. 2017).

Plaintiffs fail to make either showing. Plaintiffs have shown neither any affirmative participation in the execution of the search warrant nor any unconstitutional policies that caused a constitutional injury. Moreover, Plaintiffs do not cite any specific conduct that would question whether Sheriff Patten took reasonable measures to protect Plaintiffs from another officer's constitutional violation. See Hamilton, 845 F.3d at 663; Whitley, 726 F.3d at 656. Instead, Plaintiffs merely submit that members of the Special Operations Unit of the Adams County Sheriff's Office took part in the raid of Ahmed's business. Without more facts or citations to dispositive caselaw, the Court finds that Plaintiffs

cannot overcome qualified immunity as to Sheriff Patten in his individual capacity under supervisory liability or failure to intervene claims.

### 3. Police Chief Joseph Daughtry

In their Amended Complaint and briefs to the Motion, Plaintiffs cite similar factual allegations against Police Chief Daughtry and Mayor Gibson. Plaintiffs also assert that Police Chief Daughtry "unlawfully closed, or caused to be closed, Ahmed's place of business. . . ." [ECF No. 38] at 7-8; [ECF No. 62] at 13. The Court will permit a <u>Schultea</u> reply to support any allegations in the Amended Complaint and identify controlling case law that is applicable to Police Chief Daughtry's conduct. The Court will address the <u>Schultea</u> reply later in this opinion.

### 4. Deputy Shane Daugherty

Plaintiffs raise a 42 U.S.C. § 1983 violation under Count VI. [ECF No. 38] at 13-14. In their Amended Complaint and briefs, Plaintiffs submit that members of the Special Operations Unit of the Adams County Sheriff's Office acted "under the direction of Deputy Shane Daugherty" during the raid of the shop. <u>Id.</u> at 6; [ECF No. 62] at 12. As this Court has already discussed, it appears that Plaintiffs are trying to attach either supervisory liability or a failure to intervene action under § 1983 against Deputy Daugherty. But Plaintiffs fail to assert any factual allegations

that would show affirmative participation, unconstitutional policies, or specific conduct by Deputy Daugherty that would raise a question of the absence of reasonable measures to protect Plaintiffs during the search of the business or the home. Without more facts or the citation to caselaw that is dispositive of this case, the Court finds that Plaintiffs cannot overcome qualified immunity as to Deputy Daugherty in his individual capacity under supervisory liability or failure to intervene claims.

D. Deputy Myles

Plaintiffs name Deputy Myles in their Amended Complaint as a "law enforcement officer with the Adams County Sheriff's [O]ffice." [ECF No. 38] at 4. In the Motion, County Defendants submit that Plaintiffs "never allege[] any specific, discrete-action allegations against Myles." [ECF No. 46] at 1, n.2. The Court cannot find any specific allegations in the Amended Complaint against Deputy Myles, and Plaintiffs wholly fail to identify Myles in any capacity in their Response. See generally [ECF No. 62]. Thus, Deputy Myles shall be dismissed from this suit in his official and individual capacities because Plaintiffs have failed to state any claims against Myles upon which relief may be granted.

E. Schultea reply

Because of these circumstances, the Court finds that issues related to factual allegations contained in the Amended Complaint

are best addressed with a Schultea reply.[7] "Vindicating the immunity doctrine will ordinarily require such a reply, and a district court's discretion not to do so is narrow indeed when greater detail might assist." Schultea, 47 F.3d at 1434.

Accordingly, the Court finds that a Schultea reply is merited as to all eight Counts and hereby orders Plaintiffs to file a reply as contemplated by Schultea, 47 F.3d 1427, 1433-34 (5th Cir. 1995), and Reyes v. Sazan, 168 F.3d 158 (5th Cir. 1999), on or before February 23, 2024. Plaintiffs must provide "allegations of fact focusing specifically on the conduct of the individual who caused the plaintiff's injury." Reyes, 168 F.3d at 161. The reply must be tailored to the defense of qualified immunity, and Plaintiffs must support their claims "with sufficient precision and factual specificity to raise a genuine issue as to the illegality of the defendant's conduct at the time of the alleged acts." Id.; see also Schultea, 47 F.3d at 1430-32. The reply should provide

---

[7] The Court has struggled to discern a fair interpretation of Plaintiff's Amended Complaint and opposition to the Motion. A court's review is assisted by clear and concise pleading that sets forth the precise claims to be pursued. On the other hand, judicial review is hindered by what the Fifth Circuit has described as a "shotgun approach to pleadings ... where the pleader heedlessly throws a little bit of everything into his complaint in the hopes that something will stick." S. Leasing Partners, Ltd. v. McMullen, 801 F.2d 783, 788 (5th Cir. 1986), abrogated on other grounds. "[O]ne inevitable consequence of shotgun pleadings is to 'delay cases by wasting scarce judicial and parajudicial resources.'" Johansen v. Myers, 2023 WL 5498060, at *4 (S.D. Miss. Aug. 24, 2023) (quoting Starship Enters. of Atlanta, Inc. v. Coweta Cty., Ga., 708 F.3d 1243, 1251 (11th Cir. 2013)). The Court encourages the Plaintiffs to ensure that the reply gives Defendants adequate notice of the claims against them, facts in support of those claims, and the grounds upon which each claim rests.

specific facts about the constitutional rights allegedly violated and the conduct of each individual Defendant that supports each cause of action asserted against him. The reply should not contain factual allegations plead collectively.

As to Plaintiffs allegations against Sergeant Campbell under Count IV concerning the probable cause obtained and subsequent search of Plaintiffs' convenience store, Deputy Searcy under Counts IV and VI related to the alleged malicious prosecution of Plaintiffs, and Sheriff Patten and Deputy Daugherty under Count VI related to any supervisory liability or failure to intervene claims, the Court finds that these individual Defendants are protected by qualified immunity for such alleged conduct. Defendants may file a response to the Schultea reply on or before March 8, 2024.

IV. Conclusion

ACCORDINGLY,

IT IS HEREBY ORDERED that Defendants' Motion for Judgment on the Pleadings Based on Qualified Immunity [ECF No. 45] is granted in part to the following:

1. Plaintiffs' claims under Count IV against Sergeant Campbell related to the search and seizure of the convenience store;

2. Plaintiffs' claims under Counts IV and VI against Deputy Searcy related to malicious prosecution of Plaintiffs; and

3. Plaintiffs' claims under Count VI against Sheriff Patten and Deputy Daugherty related to supervisory liability and failure to intervene; and

4. Plaintiffs' claims against Deputy Myles in his official and individual capacities.

IT IS FURTHER ORDERED that Defendants' Motion for Judgment on the Pleadings Based on Qualified Immunity [ECF No. 45] is denied in part as to Plaintiffs' claims against the individual Defendants, subject to the _Schultea_ reply detailed in this Memorandum Opinion, for deprivation of procedural and substantive due process under the Fourteenth Amendment (Count I and Count II), deprivation of equal protection under the Fourteenth Amendment (Count III), unreasonable search and seizure in violation of the Fourth Amendment (Count IV), conspiracy in violation of 42 U.S.C. § 1985 (Count V), deprivation of constitutional rights in violation of 42 U.S.C. § 1983 (Count VI), proof of harm requiring injunctive relief (Count VII), and proof of harm requiring declaratory relief (Count VIII), except for claims against Sergeant Campbell, Deputy Searcy, Sheriff Patten, and Deputy Daugherty that this Court has already ruled herein.

IT IS FURTHER ORDERED that Plaintiffs shall submit a Schultea reply pursuant to Federal Rule of Civil Procedure 7(a)(7) within thirty (30) days of the date of entry of this Memorandum Opinion and Order as it pertains to claims that are not already dismissed under qualified immunity;

IT IS FURTHER ORDERED that Defendants shall have fourteen (14) days from the date of filing of the Schultea reply to submit their response thereto.

SO ORDERED, this 24th day of January, 2024.

/s/ David Bramlette
DAVID C. BRAMLETTE III
UNITED STATES DISTRICT JUDGE