IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

WESTERN DIVISION

ABDULLA AHMED, et al.                              PLAINTIFFS

V.                       CIVIL ACTION NO. 5:21-CV-58-DCB-BWR

CITY OF NATCHEZ, MS et al.                         DEFENDANTS

ORDER

THIS MATTER is before the Court on Sherriff Travis Patten, Deputy Shane Daugherty, Deputy Ivori Campbell, Deputy Keith Myles, and Deputy Stanley Searcy, Jr. (collectively, "County Defendants")'s Motion for Judgment on the Pleadings Based on Qualified Immunity ("Motion") [ECF No. 46]. Chief of Police Joseph Daughtry and Mayor Dan Gibson (collectively, "Natchez Defendants") joined the Motion. [ECF No. 52].

The Court entered a Memorandum Opinion and Order on January 24, 2024, granting in part and denying in part County Defendants' Motion. [ECF No. 66]. In the same Order, the Court mandated that Plaintiffs submit a Schultea Reply tailored to the defense of qualified immunity as to all eight counts in Plaintiffs' Complaint. Id. at 25. This Order incorporates the discussion and relevant facts as described in the aforementioned Memorandum Opinion and Order.

I. Background

1

This action stems from the search and seizure of EZ QUIK STOP, a convenience store owned and operated by Abdulla Ahmed in Natchez, Mississippi, and the search of Nasser Alhumasi and Kennedy Hussain's home. [ECF No. 38]. On February 29, 2024, Plaintiffs submitted a Schultea Reply, whereby Plaintiffs identify claims for due process, false arrest, and illegal search against Defendants. [ECF No. 70]. Plaintiffs argue that Natchez Defendants violated their rights under due process because Chief Daughtry and Mayor Gibson seized the convenience store and withheld possession of the convenience store without a hearing for one month. Id. at 5. As to the false arrest claim, Plaintiffs allege that Deputy Searcy, Deputy Daugherty, and Sheriff Patten lacked probable cause to charge Alhumasi with possession of two pounds of marijuana. Id. at 6-7. Finally, Plaintiffs claim that Deputy Searcy conducted an unlawful search of Hussain and Alhumasi's home without probable cause. Id. at 8. Having read the Schultea Reply, responses thereto, applicable statutory and case law, and being otherwise fully informed in the premises, the Court finds as follows:

II. Legal Standard

Rule 12(c) of the Federal Rules of Civil Procedure governs a motion for judgment on the pleadings. The standard for addressing such a motion is the same as that for addressing a motion to dismiss under Rule 12(b)(6). See In re Great Lakes Dredge & Co.,

624 F.3d 201, 209-10 (5th Cir. 2010). To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 210(quoting Bell Atl. Corp v. Twombly, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint must be enough to raise the right to relief above the speculative level. See id. The Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." Id.

III. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity is intended to protect public officials from the "burdens of fighting lawsuits which arise from the good-faith performance of their duties." Wren v. Towe, 130 F.3d 1154, 1159 (5th Cir. 1997). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." Anderson v. Valdez, 845 F.3d 580, 599-60 (5th Cir. 2016). "Qualified immunity is a question of law, but where there are genuine disputes of material fact relevant to immunity, the jury decides the question." Velasquez v. Audirsch,

574 F. App'x 476, 479 (5th Cir. 2014) (citing <u>Mesa v. Prejean</u>, 543 F.3d 264, 269 (5th Cir. 2008)).

"When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." <u>McClendon v. City of Columbia</u>, 305 F.3d 314, 323 (5th Cir. 2002)(en banc). There is a two-prong inquiry to determine whether state actors are entitled to qualified immunity. <u>Id.</u> at 322. The first inquiry is "whether a constitutional right would have been violated on the facts alleged." <u>Id.</u> Second, was the constitutional right clearly established at the time of the actions complained of. <u>Id.</u> "Ultimately, a state actor is entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions." <u>Id.</u>

Courts have discretion to skip the first inquiry and resolve a case solely on "clearly established" grounds. <u>Pearson</u>, 555 U.S. at 240. "To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" <u>Kinney v. Weaver</u>, 367 F.3d 337, 349–50 (5th Cir. 2004) (en banc) (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)). To demonstrate that a defendant violated clearly established law, the Plaintiff must show more than a citation to

generalized principles of law. The Plaintiff must demonstrate specific authority which places "the statutory or constitutional question confronted by the official beyond debate." See <u>Plumhoff v. Rickard</u>, 572 U.S. 765, 779 (2014). Courts "must be able to point to controlling authority – or robust consensus of persuasive authority – that defines the contours of the right in question with a high degree of particularity." <u>Morgan v. Swanson</u>, 659 F.3d 359, 371–72 (5th Cir. 2011) (internal citations omitted).

As an initial matter, this Court required Plaintiffs to submit a <u>Schultea</u> Reply as to all eight counts in their Complaint.[1] However, Plaintiffs' <u>Schultea</u> Reply only addresses three claims: the alleged deprivation of procedural due process under the Fourteenth Amendment against Chief Daughtry and Mayor Gibson; alleged unlawful arrest of Alhumasi against Sheriff Patten, Deputy Daugherty, and Deputy Searcy; and alleged unlawful search of Alhumasi's and Hussain's residence against Deputy Searcy. Because Plaintiffs' <u>Schultea</u> Reply fails to substantively address the remaining counts as required by this Court, Plaintiffs waive any arguments under those claims to the extent of qualified immunity. See <u>Russ v. North Pike School District</u>, 2020 WL 13682829, at *2

---

[1] The Amended Complaint contains eight counts, including deprivation of procedural due process (Count I), deprivation of substantive due process (Count II), deprivation of equal protection (Count III), unreasonable search and seizure in violation of the Fourth Amendment (Count IV), conspiracy in violation of 42 U.S.C. § 1985 (Count V), and constitutional violations under 42 U.S.C. § 1983 (Count VI). Plaintiffs also seek injunctive relief (Count VII) and declaratory relief (Count VIII) related to the alleged due process violations.

(S.D. Miss. 2020). <u>See also</u> <u>Arkansas v. Wilmington Tr. Nat'l</u> <u>Assoc.</u>, 2020 WL 1249570, at *5 (N.D. Tex. Mar. 16, 2020) (citing <u>Black v. N. Panola Sch. Dist.</u>, 461 F.3d 584, 588 (5th Cir. 2006)) ("Failure of a party to respond to arguments raised in a motion to dismiss constitutes waiver or abandonment of that issue at the district court level.")

The Court will now address Plaintiffs' and Defendants' Replies as follows.

A. Due Process

Ahmed focuses his procedural due process claim under the Fourteenth Amendment against Chief Daughtry and Mayor Gibson, alleging that Chief Daughtry and Mayor Gibson were actively present during the search and seizure of the convenience store. [ECF No. 70] at 4-6. Ahmed further alleges he had a constitutional right to not be deprived of the license to the convenience store without due process of law, and that Chief Daughtry and Mayor Gibson committed a de facto revocation of Ahmed's license by preventing access to the convenience store. <u>Id.</u>

Chief Daughtry and Mayor Gibson respond in opposition, arguing that, although a permanent deprivation of the convenience store would give rise to a procedural due process claim, the convenience store was only seized under authority of a warrant and maintained by the State until it was no longer part of a criminal

investigation. [ECF No. 71] at 4-5. Chief Daughtry and Mayor Gibson further propose that Ahmed fails to show that the convenience store's seizure was objectively unreasonable under clearly established law. Id. at 5.

"To state a Fourteenth Amendment due process claim under § 1983, a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." Gentilello v. Rege, 627 F.3d 540, 544 (5th Cir. 2010). In procedural due process claims, "the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." Zinermon v. Burch, 494 U.S. 113, 125 (1990). "Privileges, licenses, certificates, and franchises . . . qualify as property interests" for the purposes of due process. Bowlby, 681 F.3d 215, 220-21 (5th Cir. 2012). "[O]nce issued, a license or permit cannot be taken away by the State without due process." Id. (citing Bell v. Burson, 402 U.S. 535, 539 (1971)).

Here, Ahmed had a protected property interest in the license to conduct business out of his convenience store. But due process also requires an "opportunity to be heard at a meaningful time and in a meaningful manner." Matthews v. Eldridge, 424 U.S. 319, 333

7

(1976) (quotation omitted) (citation omitted). A "'meaningful time' means prior to the deprivation of the liberty or property right at issue." Bowlby, 681 F.3d at 220 (citing Zinermon, 494 U.S. at 127).

"[W]hen law enforcement agents seize property pursuant to warrant, due process requires them to take reasonable steps to give notice that the property has been taken so the owner can pursue available remedies for its return." City of West Covina v. Perkins, 525 U.S. 234, 240 (1999). Under such circumstances, due process does not require law enforcement to provide the property owner with notice of state law remedies which are established by published, generally available state statutes and case law. Id. at 241.

Here, the facts show that Chief Daughtry and Mayor Gibson were acting in an objectively reasonable manner in executing an apparently valid search warrant. Ahmed submits that Chief Daughtry informed Plaintiffs' counsel that the convenience store would remain closed until a hearing to be held at a later date. [ECF No. 71] at 3. Johnny Baldwin, an officer with the City of Natchez, explained that the convenience store was shut down because of the alleged violation of the license's terms, and that Ahmed would be able to re-open the convenience store only after a hearing conducted on or around June 15, 2021 found that Ahmed was permitted

8

to re-open the convenience store. Id. at 3-4. Under these facts, it appears that Natchez Defendants gave Plaintiffs reasonable notice to pursue remedies available.

Moreover, property seized under authority of a warrant may be maintained by the State until it is no longer needed as part of a criminal investigation. See Newman v. Stuart, 597 So. 2d 609, 615-16 (Miss. 1992). Chief Daughtry and Mayor Gibson returned the convenience store to Ahmed only 30 days after the day of the search. Although Ahmed has a protected property interest in the license to his convenience store, defendants who violate such constitutional rights still enjoy a qualified immunity that protects them from liability unless it is further demonstrated that their conduct was unreasonable under the applicable standard. Davis v. Scherer, 468 U.S. 183, 189 (1984). Merely alleging a lengthy delay occurred is insufficient. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 547 (1985) ("The chronology of the proceedings set out in the complaint, coupled with the assertion that nine months is too long to wait, does not state a claim of a constitutional deprivation.") Ahmed fails to make such a showing. Accordingly, the Court finds that Chief Daughtry and Mayor Gibson are protected by qualified immunity.

B. False arrest

Alhumasi next alleges false arrest claims under § 1983 and the Fourth Amendment against Deputy Searcy, Deputy Daugherty, and Sheriff Patten. [ECF No. 70] at 6. Alhumasi specifically alleges that these County Defendants lacked probable cause to arrest him because he did not have dominion or control over the premises when the search and seizure of the convenience store occurred. Id. at 6-8. Plaintiffs further state that County Defendants were present and actively participated in the arrest of Alhumasi. Id. at 6. County Defendants respond in opposition, arguing that Alhumasi fails to state sufficient facts to support a false arrest claim. [ECF No. 72] at 3. In the alternative, County Defendants argue that Deputy Searcy, Deputy Daugherty, and Sheriff Patten had probable cause to effect the arrest of Alhumasi under a totality of the circumstances. Id. at 7.

To prevail on a claim for false arrest under the Fourth Amendment, Alhumasi must show "(1) that he was arrested, and (2) the arrest did not have the requisite probable cause." Rhodes v. Prince, 360 F. App'x 555, 558 (5th Cir. 2010) (citing Haggerty v. Tex. S. Univ., 391 F.3d 653, 655–56 (5th Cir. 2004)).

"Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." Resendiz v.

Miller, 203 F.3d 902, 903 (5th Cir. 2000) (citation omitted). "The existence of probable cause generally establishes the reasonableness of an arrest, rendering the subjective intentions of the arresting officer irrelevant." Johnson v. City of Dallas, 141 F. Supp.2d 645, 648 (N.D. Tex. 2001).

"As applied to the qualified immunity inquiry, [Alhumasi] must show that [County Defendants] could not have reasonably believed that [they] had probable cause to arrest [Alhumasi] for any crime." O'Dwyer v. Nelson, 310 F. App'x 741, 745 (5th Cir. 2009) (citing Devenpeck v. Alford, 543 U.S. 146, 153 (2004)). Furthermore, "[e]ven law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." Mendenhall v. Riser, 213 F.3d 226, 230 (5th Cir. 2000) (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)) (other quotation marks and citations omitted).

Under Mississippi law, possession of a controlled substance may be actual or constructive. Berry v. State, 652 So. 2d 745, 749 (Miss. 1995). Constructive possession may be established where the evidence, considered under the totality of the circumstances, shows that the defendant knowingly exercised control over the contraband. Id. (quoting Curry v. State, 249 So. 2d 414, 416 (1971)). See Brown v. Byrd, 2016 WL 426551, at *6 (S.D. Miss. 2016), judgment entered, 2016 WL 427374 (S.D. Miss. 2016) ("For

11

constructive possession, the State must show that the defendant 'was aware of the cocaine and intentionally, but not necessarily physically, possessed it.'") (quoting <u>Knight v. State</u>, 72 So. 3d 1056, 1063 (Miss. 2011)). The Mississippi Supreme Court has specifically held that there is a rebuttable presumption that "one who is the owner in possession of the premises . . . in which contraband is kept . . . is in constructive possession of the articles found in or on the property possessed." <u>Dixon v. State</u>, 953 So. 2d 1108, 1113 (Miss. 2007). <u>See also</u> <u>Knight v. State</u>, 72 So. 3d 1056, 1063 (Miss. 2011) (citing <u>Dixon</u>, 953 So. 2d at 1113) (stating, "this Court has affirmed a conviction based on constructive possession when . . . [t]he defendant owned the premises where the drugs were found and failed to rebut the presumption that he was in control of such premises and the substances within. . . .").

The Court recognizes Alhumasi's right "to be free from arrest without a good faith showing of probable cause," <u>Terwilliger v. Reyna</u>, 4 F.4th 270, 285 (5th Cir. 2021) (citing <u>Winfrey v. Rogers</u>, 901 F.3d 483, 494 (5th Cir. 2018)), but the second step of the qualified immunity analysis requires Plaintiffs to show that each County Defendants' conduct was objectively unreasonable.

Here, the evidence at this stage of the proceedings is such that the Court is unable to find that County Defendants had an

arguable probable cause to arrest Alhumasi. Alhumasi was not at the convenience store during the search. Alhumasi was not described in the affidavit for the search warrant. It appears that the only reason Alhumasi was arrested was Deputy Daugherty's mistaken belief that Alhumasi was the owner of the store. [ECF No. 70] at 6. But Plaintiffs show that Alhumasi informed Deputy Searcy and Deputy Daugherty that he was not the owner of the store "on more than one occasion." Id. The Court is not persuaded that reasonable officers could agree that probable cause existed to arrest Alhumasi.

The Court's analysis does not stop here, however, because Plaintiffs are required to identify specific conduct by each County Defendant pursuant to Schultea. First, Plaintiffs allege that "Sheriff Patten is the employer and supervisor of Deputies Searcy and Daugherty," [ECF No. 70] at 6, and that Sheriff Patten was "personally involved in the arrest of Alhumasi or showed . . . deliberate indifference." Id. at 7. Neither of these allegations give County Defendants or this Court any implications of Sheriff Patten's alleged wrongdoing in this matter. Without further evidence in support, the Court finds that Sheriff Patten is protected by qualified immunity.

Next, Plaintiffs allege that Deputy Searcy "directed some other members of the Special Operations Unit of the Adams County

Sheriff's Office (SPU)[] to bring Alhumasi from his house . . . over to the store," [ECF No. 70] at 2, and that Deputy Searcy added a sale of drug paraphernalia charge against Alhumasi without probable cause. Id. at 6. Deputy Search argues that the additional charge is similar to Plaintiffs' malicious prosecution claim that this Court previously dismissed. [ECF No. 72] at 8.

There is evidence to suggest that Deputy Searcy acted objectively unreasonable by ordering law enforcement to bring Alhumasi from his home to the convenience store. Furthermore, there is insufficient information for this Court to make a determination related to the drug paraphernalia charge. Therefore, it does not appear at this stage of the proceeding that Deputy Searcy is protected by qualified immunity for the false arrest claim.

Finally, Alhumasi alleges that Deputy Daugherty arrested Alhumasi for possession of two pounds of marijuana because Deputy Daugherty mistakenly believed that Alhumasi was the owner of the store. [ECF No. 70] at 6. Deputy Daugherty argues that he is protected by qualified immunity because Alhumasi admits that Deputy Daugherty was mistaken as to this fact. [ECF No. 72] at 7. However, Alhumasi also submits that he informed Deputy Daugherty on more than one occasion that he "was not the owner of the store." [ECF No. 70] at 6. Alhumasi further shows that there were no other facts to establish that he was the owner of the alleged two pounds

14

of marijuana. Id. There is sufficient evidence to support the allegation that Deputy Daugherty's actions were objectively unreasonable. Accordingly, the Court finds that Deputy Daugherty is not protected by qualified immunity for the false arrest claim.

C. Unreasonable search

Finally, Plaintiffs allege that Deputy Searcy violated Hussain's and Alhumasi's Fourth Amendment right for the alleged unlawful search of their home. [ECF No. 70] at 8. Deputy Searcy responds in opposition by arguing that he had valid consent to search the home given by Hussain and Alhumasi. [ECF No. 72] at 10-12. The Court will analyze this claim as follows.

1. Hussain

A warrantless search is presumptively unreasonable, subject to certain exceptions, including voluntary consent. United States v. Santiago, 410 F.3d 193, 197 (5th Cir. 2005). To be valid, consent must be voluntarily given, without duress or coercion. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973).

"The voluntariness of consent is a question of fact to be determined from the totality of all the circumstances." United States v. Shabazz, 993 F.2d 431, 438 (5th Cir. 1993) (quotations and citation omitted). The Fifth Circuit has outlined the following six factors to aid a court in making its determination: "(1) the

voluntariness of the suspect's custodial status; (2) the presence of coercive police procedures; (3) the nature and extent of the suspect's cooperation; (4) the suspect's awareness of his right to refuse consent; (5) the suspect's education and intelligence; and (6) the suspect's belief that no incriminating evidence will be found." United States v. Escamilla, 852 F.3d 474, 483 (5th Cir. 2017) (citation omitted). "In this analysis, no single factor is determinative," United States v. Macias, 658 F.3d 509, 523 (5th Cir. 2011) (citation omitted), and courts consider other factors relevant to the inquiry. United States v. Tompkins, 130 F.3d 117, 122 (5th Cir. 1997) (citation omitted). The Court will analyze each factor in turn.

i. Voluntariness of Hussain's custodial status

Upon review of the evidence offered at this stage of the proceedings, the Court cannot find that Hussain's custodial status was voluntary. At the time Hussain consented to the search of his home, he was handcuffed.[2] [ECF No. 70] at 2. He remained in handcuffs and was not free to leave when he was brought from the

---

[2] In support of the detainment, County Defendants cite the Summers rule, which permits officers, executing a search warrant, to detain the occupants of the premises without any "particular suspicion that [the occupant] is involved in criminal activity." Michigan v. Summers, 452 U.S. 692, 705 (1981). The Court does not dispute the lawfulness of Hussain's detainment during the search. Instead, the Court's focus is on the voluntariness of Hussain's consent to search his home.

convenience store to his home. Id. at 8. This factor weighs in favor of Hussain.

ii. Coercive Police Procedures

Under this factor, courts should consider whether the defendant was taken into custody, handcuffed, threatened with violence, or subjected to an "overt display of authority." United States v. Tompkins, 130 F.3d 117, 122 (5th Cir. 1997). The Fifth Circuit has also found that the presence of multiple officers can be a factor in determining coerciveness so long as the other officers are also involved in the search. United States v. Perales, 886 F.3d 542, 548 (5th Cir. 2018).

The Court notes that there was no evidence of threats, promises, or deceit on behalf of Deputy Searcy to obtain Hussain's consent. In fact, Hussain's consent arose from responses to questions by Deputy Searcy. [ECF No. 70] at 2. The Court is concerned, however, that Hussain was handcuffed during the questioning and that multiple officers were involved in the search of the convenience store and home. Id. Thus, this factor is neutral as to coerciveness.

iii. Extent and Level of Hussain's Cooperation

Hussain was cooperative with law enforcement, voluntarily answering questions about the home and telling Deputy Searcy how

to get into the home. [ECF No. 70] at 2. This factor weighs in favor of Deputy Searcy.

iv. Hussain's Awareness of Right to Refuse Consent

Upon review of the record, it appears that Hussain was never informed of his right to refuse consent. [ECF No. 70] at 2. Accordingly, this factor weighs in favor of Hussain.

v. Hussain's Education and Intelligence

There are no facts provided that describe Hussain's education and intelligence. However, based upon review of the record, the Court believes that Hussain is of at least average intelligence because he holds a job as a store clerk and responded to Deputy Searcy's questions to the extent that it appears he could comprehend the situation. Without more evidence showing otherwise, the Court finds this factor weighs in favor of Deputy Searcy.

vi. Hussain's Belief that No Incriminating Evidence will be Found

Finally, it does not appear that Hussain was aware that the officers would find any incriminating evidence in the home. In fact, no such evidence was found. [ECF No. 70] at 8. Accordingly, this factor weighs in favor of Hussain.

In sum, the first, fourth, and sixth factors weigh in favor of Hussain; the third and fifth factors weigh in favor of Deputy

Searcy; and the second factor is neutral. Under these circumstances, the Court cannot find that the consent was voluntary. Accordingly, there is evidence to suggest that Deputy Searcy did not obtain valid consent from Hussain to conduct a search of the home.

2. Alhumasi

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Absent consent or exigent circumstances, law enforcement must obtain a search warrant before searching an individual's home. Steagald v. United States, 451 U.S. 204, 216 (1981); see also United States v. Blount, 123 F.3d 831, 837 (5th Cir. 1997) (en banc) ("Although a warrantless entry into a home is presumptively unreasonable, entry may be justified by exigent circumstances"). "In order to enter a person's residence, even under exigent circumstances, law enforcement first must have probable cause that contraband is inside or that an illegal act is taking place." United States v. Newman, 472 F.3d 233, 236 (5th Cir. 2006). Probable cause is based upon evaluation of the "facts, viewed from the standpoint of an objectively reasonable police officer." Ornelas v. United States, 517 U.S. 690, 696 (1996).

Upon an objective analysis of the facts, the Court is not persuaded at this stage that Deputy Searcy reasonably believed that contraband was present or that illegal acts were taking place inside the home. Although this Court has already found that officers had probable cause to search the convenience store, the search warrant did not permit officers to conduct a search of Hussain's and Alhumasi's home. Therefore, Deputy Searcy must show either consent or exigent circumstances to justify the entry and search of the home.

The Fifth Circuit has recognized the "knock and talk" as a legitimate "investigative tool when officers seek to gain an occupant's consent to search or when officers reasonably suspect criminal activity." United States v. Jones, 239 F.3d 716, 720 (5th Cir. 2001). "[T]he purpose of a 'knock and talk' is not to create a show of force, nor to make demands on occupants, nor to raid a residence. Instead, the purpose is to make an investigatory inquiry or, if officers reasonably suspect criminal activity, to gain the occupants' consent to search." United States v. Gomez-Moreno, 479 F.3d 350, 355 (5th Cir. 2007), overruled on other grounds by Kentucky v. King, 563 U.S. 452 (2011).

Here, Deputy Searcy was permitted by law to knock on the window to get Alhumasi's attention, but Deputy Searcy was limited to either conduct an investigative inquiry or obtain Alhumasi's

consent to enter the home. Plaintiffs allege that Deputy "Searcy and other members of the team pushed Hussain ahead and walked into the house behind him." [ECF No. 70] at 2. These facts do not show that Deputy Searcy received consent from Alhumasi to enter the home. Therefore, there is evidence to suggest that Deputy Searcy exceeded the scope of the knock and talk procedure and did not obtain valid consent from Alhumasi.

Finally, "[t]he exigent circumstances exception applies 'where the societal costs of obtaining a warrant, such as a danger to law officers or the risk of loss or destruction of evidence, outweigh the reasons for prior recourse to a neutral magistrate.'" United States v. Menchaca-Castruita, 587 F.3d 283, 289 (5th Cir. 2009) (quoting United States v. Richard, 994 F.2d 244, 247 (5th Cir. 1993)). The following situations have been recognized as exigent circumstances that may justify a warrantless entry into a home: the possibility that evidence will be removed or destroyed, the pursuit of a suspect, and immediate safety risks to officers and others. Newman, 472 F.3d at 237.[3] If the officers' belief was reasonable, the Court should not second-guess their judgment.

---

[3] "[T]here is no set formula for determining when exigent circumstances may justify a warrantless entry." Blount, 123 F.3d at 837. A non-exhaustive list of factors that may be considered includes: 1) the degree of urgency and the time necessary to obtain a warrant; 2) the belief contraband is about to be removed; 3) the possibility of danger to officers guarding the site while a search warrant is sought; 4) information indicating the possessors of the contraband are aware the officers are coming; and 5) the destructibility of the contraband. Id.

Blount, 123 F.3d at 838; but see United States v. Howard, 106 F.3d 70, 74 (5th Cir. 1997) (holding that the presence of drugs alone does not give rise to exigent circumstances justifying a warrantless search).

Here, the Court is not convinced that an exigency existed to enter the home. Deputy Searcy was not in hot pursuit of a suspect, there were no facts to show the possibility of evidence removed or destroyed, and there were no threats to Deputy Searcy or the public. Even if marijuana was present inside the home, which it was not, the presence of marijuana alone does not give rise to an exigency justifying warrantless entry and search. Accordingly, Deputy Searcy is not protected by qualified immunity in the unlawful search of Hussain's and Alhumasi's home.

IV. Conclusion

ACCORDINGLY,

IT IS HEREBY ORDERED that Defendants' Motion for Judgment on the Pleadings Based on Qualified Immunity [ECF No. 45] is granted in part to the following:

1. Plaintiffs' claims under Count II, Count III, Count V, Count VII, and Count VIII against each individual Defendant;

2. Plaintiffs' claims under Count I against Chief Daughtry and Mayor Gibson related to procedural due process violations; and

3. Plaintiffs' claims under Count IV and Count VI against Sheriff Patten related to the alleged false arrest of Alhumasi.

IT IS FURTHER ORDERED that Defendants' Motion for Judgment on the Pleadings Based on Qualified Immunity [ECF No. 45] is denied as to the following:

1. Plaintiffs' claims under Count IV and Count VI against Deputy Searcy and Deputy Daugherty related to the alleged false arrest of Alhumasi; and

2. Plaintiffs' claims under Count IV and Count VI against Deputy Searcy related to the alleged unlawful search of Hussain's and Alhumasi's residence.

SO ORDERED, this 3rd day of April, 2024.

/s/ David Bramlette
DAVID C. BRAMLETTE III
UNITED STATES DISTRICT JUDGE